UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

HARRY NICHOLAS, JR.

VERSUS

LOUISIANA DEPARTMENT OF
TRANSPORTATION AND
DEVELOPMENT

CIVIL ACTION

NO. 15-761-JJB-EWD

## RULING

This matter is before the Court on a Motion to Dismiss (Doc. 19) brought by the defendant, Louisiana Department of Transportation and Development ("La. DOTD"). The plaintiff, Harry Nicholas, Jr., filed an opposition (Doc. 22-1) and the defendant filed a reply brief (Doc. 24). Oral argument is unnecessary. For the reasons stated herein, the defendant's Motion to Dismiss (Doc. 19) is **GRANTED**.

On November 12, 2015, the plaintiff filed suit in this Court, alleging violations of his rights under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Employee Retirement Income Security Act ("ERISA"), the Louisiana Employment Discrimination Law ("LEDL"), and Louisiana Civil Code articles 2315 and 2320. *Compl.*, Doc. 1. La. DOTD filed the present motion seeking dismissal of the plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See Def.'s Supp. Mem.*, Doc. 19-1.

## I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. Because an attack on 12(b)(1) grounds is jurisdictional, a court should address it before addressing any arguments on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). The burden of proof lies on the party asserting jurisdiction. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). A motion to dismiss

1

under 12(b)(1) is analyzed under the same standard as a motion to dismiss under 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." "In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Davis v. Bellsouth Telecomms.*, Civil Action No. 11-722-FJP-SCR, 2012 WL 2064699, at *1 (M.D. La. June 7, 2012) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)). To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When conducting a Rule 12(b)(6) analysis, the court "must limit [its] inquiry to the facts stated in the complaint and the documents attached to or incorporated in the complaint." *Murray v. Royal All. Assocs.*, Civil Action No. 06-617-JJB, 2007 WL 2682849, at *1 (M.D. La. July 10, 2007) (citation omitted). In a 12(b)(1) analysis, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

## II.   DISCUSSION

### A.   Lack of Subject Matter Jurisdiction

La. DOTD argues that the Eleventh Amendment bars the plaintiff's claims under the ADEA, ADA, and Louisiana state law. *Def.'s Supp. Mem.* 2–9, Doc. 19-1. The plaintiff responds, however, by asserting that Louisiana has waived its Eleventh Amendment immunity by accepting federal funds. *Pl.'s Opp'n* 2–8, Doc. 22-1.

2

1.      ***ADEA & ADA***

The Eleventh Amendment bars an individual from suing a state, including a state agency or an arm of the state,[1] in federal court unless Congress clearly and validly abrogates the state's sovereign immunity or the state consents to suit. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Congress has not validly abrogated a state's immunity under the ADEA[2] or Title I of the ADA.[3]  However, a state can still be susceptible to suit under the ADEA or ADA if it waives its Eleventh Amendment immunity.

A state may "waive its immunity by voluntarily participating in federal spending programs when Congress expresses 'a clear intent to condition participation in the programs . . . on a State's consent to waive its constitutional immunity.'" *Pederson v. La. St. Univ.*, 213 F.3d 858, 876 (5th Cir. 2000) (quoting *Litman v. George Mason Univ.*, 186 F.3d 544, 550 (4th Cir. 1999)). Merely receiving federal funds does not establish a valid waiver, "[r]ather, such a waiver must be expressed in the language of the statute." *Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 379 (M.D. La. 2012) (citing *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 819 (9th Cir. 2001)). Although the term "waiver" or "condition" need not be in the statute, the language must be unambiguous and unequivocal. *See Pederson*, 213 F.3d at 876. For example, "in 42 U.S.C. § 2000d-7(a)[sic] Congress has successfully codified a statute which clearly, unambiguously, and

---

[1] The state's Eleventh Amendment immunity extends to any state agency or other political entity that is deemed the state's "alter ego" or an "arm of the State." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). The parties do not dispute that La. DOTD is considered an "arm of the State" for purposes of Eleventh Amendment immunity. *See Def.'s Supp Mem.*, Doc. 19-1; *Pl.'s Opp'n*, Doc. 22-1.

[2] *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 91 (2000) ("[W]e hold that the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment. The ADEA's purported abrogation of the State's sovereign immunity is accordingly invalid."); *see Johnson-Blount v. Bd. of Supervisors for S. Univ.*, 994 F. Supp. 2d 780, 783 (M.D. La. 2014).

[3] *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001); *see Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 379 (M.D. La. 2012) ("Congress has not validly abrogated states' Eleventh Amendment immunity under Title I of the ADA.").

unequivocally conditions receipt of federal funds under Title IX on the State's waiver of Eleventh Amendment Immunity." *Id.* Section 2000d-7(a)(1) states, "[a] State shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of" various federal statutes.[4] Similar language contained in 20 U.S.C. § 1403[5] "conditions a state's receipt of federal [Individuals with Disabilities Education Act] funds on its consent to suit under that Act." *Pace v. Bogalusa Cty. Sch. Bd.*, 403 F.3d 272, 280 (5th Cir. 2005).

Here, the State of Louisiana has not waived its Eleventh Amendment immunity as it pertains to the ADEA and ADA through the acceptance of federal funding. According to the plaintiff, the state "voluntarily waived its immunity by accepting federal funds which unequivocally conditioned participation in its program on the express waiver of the State to comply . . . 'with applicable federal civil rights laws, regulations, requirements, and guidance, and follow applicable federal guidance[.]'" *Pl.'s Opp'n* 5, Doc. 22-1. This argument fails for two main reasons. First, the plaintiff has not cited to or provided any actual agreement whereby the State of Louisiana agrees to the terms stated above. Instead, the plaintiff cites to a web page that discusses, among other things, that the Regional Transit Authority of New Orleans, Louisiana, will receive 5 million dollars to replace a ferry terminal. *Id.* at 5 n.30.[6] The conditional language quoted by the plaintiff does not appear anywhere on this page. It is not the role of this Court to conduct outside research, including searching within a website, in an attempt to substantiate claims made by a party. Each party has a duty to attach and appropriately cite to all documents necessary for the

---

[4] "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IV of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provision of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1).

[5] "A State shall not be immune under the eleventh amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter." 20 U.S.C. § 1403(a) (effective June 4, 1997 to June 30, 2005).

[6] The plaintiff cited the following web page: https://www.transit.dot.gov/about/news/us-department-transportation-awards-59-million-improve-passenger-ferry-services-ferry.

pending motion. Second, the quoted language does not amount to an express and unequivocal waiver of the state's immunity because, in contrast to the statutory language of 42 U.S.C. § 2000d-7(a)(1), there is no mention of the state's immunity from ADEA or ADA claims brought in federal court. Therefore, the plaintiff's ADEA and ADA claims are dismissed for lack of subject matter jurisdiction.

2.    *State Law Claims*

The principle of Eleventh Amendment immunity "applies as well to state-law claims brought into federal court under pendent jurisdiction." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). As previously stated, a state retains its immunity from suits brought in federal court unless they have consented to or expressly waived their immunity from such suit. The State of Louisiana has not waived its immunity in federal court for state law claims—"No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana court." La. R.S. § 13:5106(A); *Fairley v. Stalder*, 294 Fed. App'x 805, 811 (5th Cir. 2008) (discussing La. R.S. 13:5106 and stating, "we have unequivocally stated, on numerous occasions, that Louisiana has not waived its Eleventh Amendment immunity in this manner"); *Griffith v. Louisiana*, 808 F. Supp. 2d 926, 933 (E.D. La. 2011) (dismissing all state law claims brought against Louisiana based on the language of La. R.S. 13:5106).

The plaintiff's argument for this Court's jurisdiction over its state law claims are the same as those made in regards to its ADEA and ADA claims—the state waived its Eleventh Amendment immunity by accepting federal funding. Therefore, for the reasons stated above, the plaintiff's state law claims are dismissed for lack of subject matter jurisdiction.

## B.   Failure to State a Claim

Because the Court does not have subject matter jurisdiction over the plaintiff's ADEA, ADA, or state law claims, the Court will not address whether the plaintiff's complaint sufficiently stated such claims under FRCP 12(b)(6). *See Hitt*, 561 F.2d at 608. Therefore, the Court's 12(b)(6) analysis is limited to the plaintiff's claim under ERISA.

La. DOTD argues that the plaintiff's pension plan is excluded from ERISA coverage, and therefore his complaint fails to state a claim for relief under ERISA. *Def.'s Supp. Mem.* 9–11, Doc. 19-1. The plaintiff contends, however, that he made voluntary contributions to his pension plan and that those contributions are not excluded from ERISA coverage. *Pl.'s Opp'n* 8–9, Doc. 22-1.

ERISA was "enacted to encourage the establishment and growth of private pension plans and to protect the participants in those plans." *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995) (citing 29 U.S.C. § 1001(c)). Congress has, however, excluded certain plans from ERISA coverage. *See* 29 U.S.C. § 1003(b)(1) (Title I exclusions); *id.* § 1321(b) (Title IV exclusions). For example, section 1003(b)(1) excludes "governmental plans" from ERISA coverage under Title I. "Governmental plans" are defined as "a plan established or maintained for its employees by . . . the government of any State or political subdivision thereof . . . ." *Id.* § 1002(32).

Although governmental plans are generally excluded from ERISA coverage, any voluntary employee contributions within a governmental plan are not considered part of such plan. *Id.* § 1003(c).[7] "Voluntary employee contributions" are defined as "any contribution (other than a mandatory contribution . . . .) which is made by an individual as an employee under a qualified

---

[7] "If a pension plan allows an employee to elect to make voluntary employee contributions to accounts and annuities . . . such accounts and annuities (and contributions thereto) shall not be treated as part of such plan (or as a separate pension plan) for purposes of any provision of this subchapter other than section 1103(c), 1104, or 1105 of this title[.]" 29 U.S.C. 1003(c).

6

employer plan which allows employees to elect to make contributions . . . ." 26 U.S.C. § 408(q)(3)(B). Further, a "mandatory contribution" is the "amount[] contributed to the plan by the employee which [is] required as a condition of employment, as a condition of participation in such plan, or as a condition of obtaining benefits under the plan attributable to employer contributions." *Id.* § 411(c)(2)(C).

Louisiana's State Employee Retirement System ("LASERS") was established to provide retirement allowances and other benefits according to state law. *See* La. R.S. § 11:401 *et seq.* Accordingly, "[e]ach person who becomes an employee in the state service . . . shall become a member of the [LASERS] system as a condition of employment." *Id.* § 11:411(1). The parties do not dispute that LASERS constitutes an excluded "governmental plan" for purposes of ERISA coverage. *Def.'s Supp Mem.* 10, Doc. 19-1; *see Pl.'s Opp'n* 8–9, Doc. 22-1 (arguing that the retirement plan was not exclusively maintained by the state and, therefore, that some of the plan "[is] not subject to the plans excluded by ERISA"). The parties do dispute, however, whether any contributions made by the plaintiff into this plan constitute "voluntary employee contributions," subjecting such contributions to ERISA, or whether they are "mandatory contributions" that remain excluded from coverage. *See Pl.'s Opp'n* 8–9, Doc. 22-1; *Def.'s Reply* 4–5, Doc. 24.

In regards to the plaintiff's ERISA claim, the complaint alleges that in July 2013, the plaintiff's employment with La. DOTD "became subjected to . . . unfair practices in violation of ERISA law" because he was 'terminated in order to prevent him from having the opportunity to collect fully vested rights in his retirement benefits when he was so close to acquiring such rights." *Compl.* ¶ 13, Doc. 1. Other than this basic allegation, the complaint does not allege any specific facts regarding the plaintiff's pension plan with the state, such as whether he was part of LASERS or whether he made any voluntary contributions to the plan. Instead, these facts were developed

through the parties' briefs. Even assuming the facts alleged in the parties' briefs are true, the Court agrees with La. DOTD that such mandatory contributions to a governmental plan are excluded from ERISA coverage. For that reason, the plaintiff has not provided a basis for the Court to grant it leave to amend. Therefore, the plaintiff's ERISA claim is dismissed for failure to state a claim upon which relief can be granted.

**III.   CONCLUSION**

For the reasons stated above, the defendant's Motion to Dismiss (Doc. 19) is **GRANTED.**

Signed in Baton Rouge, Louisiana, on June 28, 2016.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**